UNITED STATES of America,
Plaintiff-Appellant,

v.

Stephen Michael KESSLER, Donald Gene Booth, Inez Eaton Guerrero, Patrick John O'Shea, and Cynthia Lorraine, Defendants-Appellees.

No. 82–1544.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1982.

Decided Nov. 4, 1982.

As Amended Nov. 19, 1982.

Jack C. Wong, Asst. U.S. Atty., Portland, Or., for plaintiff-appellant.

Stephen Crew, Ronald Hoevet, Portland, Or., for defendants-appellees.

Appeal from the United States District Court for the District of Oregon.

Before KENNEDY and SKOPIL, Circuit Judges, and JAMESON,* District Judge.

KENNEDY, Circuit Judge:

This case is before us a second time, the cause having been remanded for the trial court's further determination respecting the admissibility of certain eyewitness testimony in *United States v. Booth,* 669 F.2d 1231 (9th Cir.1981). As we again find an inadequate basis for the trial court's suppression order, we reverse.

The facts of the case are set forth in our earlier opinion. The eyewitness testimony is from bank tellers asked to view a suspect police returned to the bank in handcuffs an hour after the crime was committed. Appellee Booth states it is crucial to his position that the eyewitnesses filled out identification questionnaires within fifteen to twenty minutes after the robbery and again after the show-up, and that typically the identification questionnaires filled out before viewing the suspect were vague and general while the identification cards filled out afterwards gave much more specific descriptions.

As an initial matter, the trial court suppressed the eyewitnesses' testimony apparently on the basis that the show-up was improper insofar as no exigent circumstances required Booth to be handcuffed and taken back to the bank. 669 F.2d at 1239.

We reversed in reliance on our cases holding that a show-up is a permissible means of identification without requiring a showing of exigency. *Id.* (citing *United States v. Williams,* 626 F.2d 697, 703 (9th Cir.), *cert. denied,* 449 U.S. 1020, 101 S.Ct. 586, 66 L.Ed.2d 482 (1980) and *United States v. Coades,* 549 F.2d 1303, 1305 (9th Cir.1977)). A show-up can be a salutory police practice. Although a show-up is more suggestive than a lineup because the suspect is the only person presented for identification, returning a suspect to the scene of a crime shortly after its commission to determine whether eyewitnesses identify him as the

perpetrator permits the witnesses to make the determination while the image of the perpetrator is still fresh in their minds, and may lead to the expeditious release of innocent suspects. *See United States v. Coades,* 549 F.2d at 1305.

We remanded to the trial court with instructions to determine "whether in the totality of circumstances the 'procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" 669 F.2d at 1239 (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968) and *United States v. Field,* 625 F.2d 862, 865 (9th Cir.1980)). On remand, the trial court again suppressed the eyewitness testimony, and the Government filed this appeal pursuant to 18 U.S.C. § 3731.

In contending that the trial court's order should be upheld, Booth advances three principal arguments. First, Booth contends that his display in handcuffs and accompanied by a large number of officers was inherently suggestive. Second, he contends that the police at one point referred to him as a "suspect," and that such a word is suggestive in itself. And third, he contends that the written descriptions on the identification cards filled out before and after he was displayed were so divergent that the show-up procedure must have been impermissibly suggestive. For reasons stated below, we find these arguments unpersuasive.

■ As an initial matter, we note that in most cases it is unavoidable that a show-up at the scene of a crime will be suggestive of guilt to a certain degree. Nevertheless, this court has found that show-ups are not objectionable unless "the 'procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *United States v. Booth,* 669 F.2d at 1239. Although at first blush it may appear that this standard says no more than that a procedure should be permitted unless it is impermissi-

* Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

ble, the rule means that at least some level of suggestibility is legitimate. With this in mind, we turn to Booth's contentions.

First, Booth's contentions with regard to the differences between pre and post show-up identification questionnaires do not advance his cause. That the later descriptions were detailed and accurate cannot be used to show impermissible suggestiveness since one of the central and legitimate purposes of a show-up is to sharpen the recollections of eyewitnesses and to enable them to focus attention on details they may have otherwise overlooked. That descriptions become more detailed after a suspect is displayed in a show-up at a crime scene is intended as well as expected. *See Manson v. Braithwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977) (listing the level of certainty demonstrated at the confrontation as an indicia of reliability to be weighed *against* the corrupting effect of suggestive identification); *see also Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–383, 34 L.Ed.2d 401 (1972). Though we must resolve challenges to identification procedures on a case by case basis, *see Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), law enforcement officials should be in a position to discern the permissibility of a given investigatory procedure before it is commenced. To hinge the permissibility of a show-up on the results obtained would undermine the attempt to define objective procedures to guide law enforcement officers in subsequent cases. *See Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (validity of search cannot be tested by evidence discovered).

Booth is left, therefore, to an assertion that given the imprecise descriptions in the initial questionnaires there was no sufficient basis for the conduct of a show-up. Upon careful consideration of the record, we find this also unpersuasive. First, the identification cards in question were filled out shortly after the robbery. One cannot expect too precise recollections from crime victims likely still in shock. Second, the questionnaires are not in fact as disordered

as they may appear in isolation. The witness Powers, for example, gave some different descriptions initially, but it appears that she was actually describing different culprits in the three person robbery. And third, after filling out their initial questionnaires and *before* the show-up, the witnesses were interviewed by FBI agents trained at facilitating the expression of eyewitnesses' recollections. The witnesses gave more complete descriptions, resulting in the detailed radio description that led to the apprehension of the suspect. Thus, we conclude that there was ample support for the use of a properly conducted show-up procedure.

Turning to consider the procedure used for the show-up in this case, we find Booth's contentions with regard to his being called a "suspect" and his being in handcuffs and surrounded by police officers likewise unavailing. While it is the better practice not to refer to the subject of a show-up as a "suspect" in view of the danger of adverse inferences being drawn by a witness, the reference by itself is not an impermissible suggestion. The use of handcuffs or other indicia of custody will not invalidate a show-up, at least where necessary for the prompt and orderly presentation of the suspect, consistent with protection of the officers and witnesses.

On the facts of this case, we find nothing in the conduct of the show-up to support the exclusion of the eyewitnesses' testimony. The agent in charge gave a careful and proper explanation that no inference was to be drawn from the fact of custody or the use of handcuffs. There is no indication in the record that the officers encouraged or permitted group consultation. Booth was displayed only briefly and then escorted away. Finally, though a large number of officers were present, this was to be expected after the recent occurrence of a major crime involving firearms. The presence of a large number of officers is accounted for by the crime, not by any particular interest in the show-up procedure.

In concluding, we note that where the procedure employed does not give rise to "a very substantial likelihood of irreparable misidentification," identification evidence is for the jury to weigh. *Manson v. Braithwaite*, 432 U.S. at 116, 97 S.Ct. at 2253. As Justice Blackmun spoke for the Court in *Manson:*

> We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

*Id.*

This case was presented to us on November 1, 1982, and the trial is to proceed on November 8, 1982. Accordingly, we have expedited our opinion, and we order the mandate issued now.

REVERSED.