UNITED STATES of America,
Plaintiff–Appellee,

v.

Dennis Santander SIMOY,
Defendant–Appellant.

No. 92–10527.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1993.

Decided July 14, 1993.

Ladd A. Baumann, Baumann & Hull, Agana, Guam, for defendant-appellant.

Karon V. Johnson, Asst. U.S. Atty., Agana, Guam, for plaintiff-appellee.

Before: GOODWIN, TANG, and NOONAN, Circuit Judges.

GOODWIN, Circuit Judge:

Simoy appeals his conviction for felony murder, in violation of 18 U.S.C. § 1111, and robbery, in violation of 18 U.S.C. § 2111. Appellant contends that the district court erred in finding that a witness's identification of appellant was reliable, and therefore admissible at trial, despite an unnecessarily suggestive identification procedure. In addition, he claims that the district court abused its discretion in denying his request for a jury instruction covering the lesser included offense of second degree murder. We affirm.

### Reliability of Davis's Identification

At approximately 8:00 p.m. on December 29, 1991, Sergeant Stacey Levay escorted Peregrina Armour, an Andersen Air Force Base clerk, to the Bank of Fort Sam Houston for the purpose of depositing the commissary's daily proceeds. Following the usual procedure, Armour drove her own car and Levay followed in his patrol vehicle. The parking lot was lit by street lights. The breezeway which screened the side of the bank building, however, was unlit.

As Armour and Levay stepped into the breezeway entrance, they were attacked by two men who stole the money pouch containing the daily proceeds. During the attack, Levay was struck on the head five times with a blunt object, suffering fatal injuries.

Senior Airman Joseph Davis was stationed at the base security office, which is located in

the same building as the bank. Upon hearing a loud noise, Davis looked through the double doors which led into the building and saw a man by the bank's entrance approximately forty-five to fifty feet away. Davis ordered the man to halt, but the man escaped by running to a waiting car. Davis was able to identify the car's license plate number which linked the car to Jose Simoy, appellant's brother.

On December 30, 1991, Davis made a written statement which stated in relevant part: "I saw a male individual that appeared to be a Chamorro, approximately 5'7", 185 lbs. It was very dark so I was'nt [sic] able to see anything but a siloette [sic] of the individual." However, by the evening of December 31, Davis realized that a recurring mental image he had in his mind was that of the person whom he had seen at the bank. On January 4, 1992, Davis described this image to a police sketch artist who prepared a sketch of the individual.

After completion of the sketch, Davis joined several FBI agents. One of the agents looked at the sketch and then held up a photograph of appellant. The agent commented that the photo closely matched the sketch and asked Davis if the photograph resembled the person he had witnessed the night of the robbery. Davis replied that "the person in the picture closely resembled that person that I saw," but he testified that he "wasn't a hundred percent sure."

On January 17, Davis was shown a six-photo lineup, which included a different photo of appellant than the one which Davis had previously seen. Davis picked the photo of appellant and stated that it "closely resembled the person that I had seen that night and the image that I had in my mind."

At trial, Davis identified appellant as the person he had witnessed on the night of the robbery. The district court held that Davis's identification was admissible at trial on the ground that it was reliable despite the impermissibly suggestive pretrial procedure. We review the constitutionality of pretrial identification procedures de novo. *United States v. Givens*, 767 F.2d 574, 580 (9th Cir.), *cert. denied*, 474 U.S. 953, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985).

First, we "must determine whether the procedure was 'so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification.'" *Id.* at 581 (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)). Second, if we determine that the procedure was impermissibly suggestive, we must decide whether the witness's in-court identification was "nonetheless reliable." *Givens*, 767 F.2d at 581 (quoting *Manson v. Brathwaite*, 432 U.S. 98, 107, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977)).

The government concedes that the procedure in this case was impermissibly suggestive, so we need only consider "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). In *Neil*, the Supreme Court discussed the factors relevant to our analysis:

> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

*Id.* at 199–200, 93 S.Ct. at 382.

Two of the factors are undisputed in this case: Davis's high degree of attention during the time he witnessed Levay's assailant, and the short length of time between the crime on December 29, 1991 and the confrontation on January 4, 1992. Both of these factors weigh in favor of a finding of reliability.

A third factor to be considered under *Neil* is the certainty of Davis's identification at the time of confrontation. Davis stated that the photo of appellant closely resembled the person whom he had seen on the night of the robbery. Appellant stresses, however, that Davis stated that he was not "a hundred percent sure" of his identification. A statement of absolute certainty would militate in favor of a finding of reliability. *See Manson*, 432 U.S. at 115, 97 S.Ct. at 2253. Although

none of our cases has required absolute certainty to support a finding of reliability, we recognize that Davis did evidence a slight degree of hesitancy regarding his identification.

Turning to the next *Neil* factor, we find that Davis did not have a good opportunity to view the criminal at the time of the crime. According to Davis's own statements, it was dark under the breezeway, the criminal was at a distance of at least forty-five feet away, and he viewed the person's face for approximately five seconds. Such a poor viewing opportunity raises a question whether Davis's identification is sufficiently reliable. *Compare Denham v. Deeds*, 954 F.2d 1501, 1504 (9th Cir.1992) (finding identification reliable because opportunity to view was at very close proximity during course of armed robbery) *and United States v. Valenzuela*, 722 F.2d 1431, 1432 (9th Cir.1983) (finding identification reliable because opportunity to view at distance of three feet for three to four minutes) *with United States v. Field*, 625 F.2d 862, 868 (9th Cir.1980) (finding identification unreliable because opportunity to view lasted "only a few seconds and from a distance of 20 feet"). *See also Manson*, 432 U.S. at 114, 97 S.Ct. at 2253 (finding identification reliable because viewing opportunity lasted two to three minutes and it was not dark); *Neil*, 409 U.S. at 200, 93 S.Ct. at 382 (finding identification reliable because adequate lighting).

Counterbalancing Davis's poor viewing opportunity, however, is Davis's highly accurate description of appellant *prior* to the suggestive procedure. The "prior description" in this case consists of the sketch that the police artist created with Davis's input. Absent the sketch, the viewing conditions in this case—taken together with Davis's degree of certainty—would create a serious question. *See Field*, 625 F.2d at 868–70 (finding identification unreliable because of poor viewing opportunity and inability to single out suspect from six-photo spread). Unlike the situation in *Field*, however, any inference of sugges-

tive identification that flows from these factors is rebutted by Davis's detailed and accurate description of appellant.

Under the totality of the circumstances, Davis's identification was reliable even though the photo display was suggestive. There was no reversible error.[1]

### Lesser Included Offense Instruction

■ Appellant argues that the district court erred in denying his request for a jury instruction on the lesser included offense of second-degree murder. We review alleged errors in the court's instructions in light of the evidence in the particular case.

A defendant is "entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). Section 1111(a) provides: "Murder is the unlawful killing of a human being with malice aforethought." This is defined to include every murder "committed in the perpetration of, or attempt to perpetrate, any ... robbery." 18 U.S.C. § 1111(a). Any murder not included within the definition of § 1111(a) is classified as murder in the second degree. *Id.*

The murder of Levay occurred during the course of a robbery. During the robbery, Levay, the security escort, was repeatedly struck on the head with a heavy blunt object. If the jury found that appellant participated in the robbery, it could not rationally acquit him of felony murder and convict him of second degree murder. Accordingly, the district judge did not err in denying appellant's request for an instruction on second degree murder.

AFFIRMED.

---

1. Because we find Davis's identification to be reliable, we need not reach the issue of harmless error. We note, however, that there was additional evidence of Simoy's guilt. Joseph Wolford, who admitted his participation in the

crime, provided detailed testimony regarding the planning of the robbery and assault. Wolford also testified that appellant struck Levay on the head and continued to strike Levay even after he had fallen to the ground.