67 F.3d 310
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory Alan MORTON, aka Michale Arnold Lopez; Hugo
Alvarado McFarland, aka Estevan Vincencio,
Defendant-Appellant.
 No. 94-50508.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 10, 1995.
Decided Sept. 21, 1995.
 
 Before: THOMPSON, LEAVY and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. OVERVIEW
 
 2
 Gregory Alan Morton appeals his convictions on seven counts of bank robbery in violation of 18 U.S.C. Sec. 2113(a). He also appeals his 380-month sentence. We affirm Morton's conviction, but remand to the district court for resentencing.
 
 II. DISCUSSION
 A. Eyewitness Identification
 
 3
 We review de novo the constitutionality of pretrial identifications. United States v. Simoy, 998 F.2d 751, 752 (9th Cir.1993) (citing United States v. Givens, 767 F.2d 574, 580 (9th Cir.)), cert. denied, 474 U.S. 953 (1985). We "determine whether the procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification," id. (internal quotation marks omitted), and if so, "whether the witness's in-court identification was nonetheless reliable." Id. (internal quotation marks omitted).
 
 1. Curbside Identification
 
 4
 The facts of this case are similar to those of United States v. Kessler, 692 F.2d 584 (9th Cir.1982). In Kessler, the police referred to the suspect as "the suspect." Id. at 586. The suspect was in handcuffs and surrounded by a large number of law enforcement personnel. Id. We held the curbside identification admissable because a proper admonition was given to the witnesses and there was "no indication in the record that the officers encouraged or permitted group consultation." Id.
 
 
 5
 Morton's curbside identification was nearly identical to the Kessler curbside identification. The one difference Morton alleges is that the three Wells Fargo eyewitnesses "were in sight distance of one another and could see and watch each other make the identification." This fact is not enough, however, to render the curbside identification unduly suggestive. Moreover, one of the eyewitnesses testified on cross-examination that he and his coworkers were explicitly told not to engage in group consultation. As we stated in Kessler:
 
 
 6
 In concluding, we note that where the procedure employed does not give rise to "a very substantial likelihood of irreparable misidentification," identification evidence is for the jury to weigh.
 
 
 7
 692 F.2d at 587 (quoting Manson v. Braithwaite, 432 U.S. 98, 116 (1977)).
 
 
 8
 The district court did not err in admitting the curbside identification testimony.
 
 2. Surveillance Photos
 
 9
 FBI Agent Suyenaga investigated Morton's robberies. After Morton was arrested, Suyenaga prepared a photospread with six photos including one of Morton. When he interviewed tellers, Suyenaga showed them a surveillance photo taken of the robber during the robbery by the bank's photo surveillance equipment. After the tellers stated they recognized the scene, he took away the single photo and showed them the photospread. Each teller picked out Morton from the photospread. Contrary to Morton's contention, his photo in the photospread was not the only one that resembled the surveillance photo.
 
 
 10
 Morton claims this investigative technique was unduly suggestive. We disagree, because we have previously approved the same technique. United States v. Browne, 829 F.2d 760, 764-65 (9th Cir.1987) (and cases cited therein), cert. denied, 485 U.S. 991 (1988).
 
 
 11
 The court did not err in admitting evidence of Morton's identification utilizing the surveillance photos.
 
 3. Repeated Photographs
 
 12
 Morton complains that when Agent Suyenaga was investigating the string of robberies he used a photostack that contained multiple pictures of Morton. This photostack had surveillance pictures of all the unsolved robberies Suyenaga was investigating. Morton appeared multiple times because he committed multiple robberies. According to Suyenaga, Morton was not the only suspect with multiple surveillance photos in the stack.
 
 
 13
 Morton was able to have the jury consider the putative suggestive nature of this procedure. His one witness was a psychology professor who explained to the jury how eyewitness testimony can be manipulated by such practices. The jury resolved the question, and rightly so. "We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill." Manson, 432 U.S. at 116, quoted in Kessler, 692 F.2d at 587.
 
 
 14
 In sum, we hold the district court did not err in admitting any of the identification evidence. There was no substantial likelihood of misidentification, and no evidentiary hearing was required.
 
 B. Severance of Count 2
 
 15
 We review for abuse of discretion the district court's refusal to sever a count. United States v. Lewis, 787 F.2d 1318, 1321 (9th Cir.1986) (citations omitted), amended 798 F.2d 1250, cert. denied, 489 U.S. 1032 (1989). Morton has the burden of proving his joint trial was so prejudicial that his right to a fair trial was abridged. Id.
 
 
 16
 We have held that "[i]f all of the evidence of the separate count would be admissible upon severance, prejudice is not heightened by joinder." United States v. Johnson, 820 F.2d 1065, 1070 (9th Cir.1987). In Johnson, two bank robbery counts were joined. We affirmed the convictions because the evidence on each count would have been admissable in a trial on the other count. The evidence was admissable under Federal Rule of Evidence 404(b) because identity was the main issue and the bank robbers used a similar modus operandi in each robbery. Id. at 1070-1071.
 
 
 17
 Here, Morton used the same modus operandi in seven bank robberies including the one charged in Count 2. The only difference was that after the robbery charged in Count 2, Morton led police on a high-speed chase.
 
 
 18
 Morton also argues joinder was improper because it burdened the jury with the difficult task of compartmentalizing the testimony as to the various counts. He correctly points out that the government did not present its case in a chronological manner.
 
 
 19
 The court, however, instructed the jury to consider each count separately, and the government's case was fairly simple--an eyewitness teller for each robbery identified Morton in court. We conclude the district court did not abuse its discretion in denying Morton's motion to sever Count 2.
 
 
 20
 C. Court's Order for Morton to Show His Hand
 
 
 21
 We review de novo whether Morton's Fifth Amendment rights were violated. United States v. Hill, 953 F.2d 452, 456 (9th Cir.1991).
 
 
 22
 At a sidebar conference, the district court ruled that Morton had to show his hand to a government witness so that the witness could testify whether the tatoo he remembered on the robber was the same as a tatoo on Morton's hand. Morton refused to show the witness his hand. Morton argues the district court's colloquy in the presence of the jury, which followed this refusal, violated his due process rights under the Fifth Amendment.
 
 
 23
 Morton cites no case that holds or implies the colloquy between him and the court violated his Fifth Amendment rights. Instead, he cites the boilerplate language from United States v. Olvera, 30 F.3d 1195, 1196 (9th Cir.), cert. denied, 115 S.Ct. 610 (1994), about the importance of Fifth Amendment rights. But the holding of Olvera, dealing with a defendant being forced to say incriminating words for identification purposes, is inapposite. Here, the district court asked a proper question and repeated it three times to ensure that Morton understood he was disobeying a court order. Morton's Fifth Amendment rights were not violated.
 
 D. The Lesser-Included Offense Instruction
 
 24
 In this circuit bank larceny is not a lesser-included offense of bank robbery. United States v. Lucas, 963 F.2d 243, 247 (9th Cir.1992) (citing United States v. Gregory, 891 F.2d 732, 734 (9th Cir.1989)). Morton asks us to revisit this issue in light of other circuits' decisions. We have no authority to abrogate Gregory and Lucas. Lucas, 963 F.2d at 247 (citing United States v. Aguilar, 883 F.2d 662, 690 n. 25 (9th Cir.1989)), cert. denied, 498 U.S. 1046 (1991). Morton must present his argument to an en banc court or to the Supreme Court.
 
 E. Sentencing Issues
 
 25
 We review de novo the district court's interpretation of the Sentencing Guidelines. United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir.1994). The district court's factual findings are reviewed for clear error. Id. Departures from the guidelines are reviewed by using the three-part test from United States v. Lira-Barraza, 941 F.2d 745, 746-47 (9th Cir.1991) (en banc). First, we review de novo whether the sentencing court had legal authority to depart. Second, we review for clear error the factual findings identified by the sentencing court in support of the departure. Third, we review for abuse of discretion the extent of the district court's departure.
 
 
 26
 1. Four-Level Upward Departure for the Dangerous High-Speed Chase
 
 
 27
 The district court departed upward by four levels in calculating Morton's base offense level because of the circumstances of the dangerous high-speed chase which resulted when Morton fled from the officers. This departure was added to a two-level increase for reckless endangerment during flight under United States Sentencing Commission Guideline Manual Sec. 3C1.2 (1993).[1]
 
 
 28
 Morton concedes he is eligible for the two-level increase under Sec. 3C1.2, which reads: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." He argues, however, that the district court had no authority to depart beyond these two levels.
 
 
 29
 We disagree. Application Note 6 to Sec. 3C1.2 authorizes an upward departure if the defendant's "conduct posed a substantial risk of death or bodily injury to more than one person." The police had their weapons drawn when Morton sped away, placing his codefendant in extreme danger. He then led police officers on a high-speed chase through downtown San Diego during which he endangered the life of a motorcycle officer who had to veer off during the chase. In addition, he endangered the lives of the driver and passenger of a convertible MG when he ran his pickup truck up the back of that car. This cumulative behavior posed a direct and substantial risk of death or bodily injury to more than one person; therefore, we affirm the district court's authority to depart upward more than two levels.
 
 
 30
 Nevertheless, we must vacate Morton's sentence and remand for resentencing. The sentencing court failed to give "a reasoned explanation of the extent of the departure founded on the structure, standards and policies of the [Sentencing] Act and Guidelines." Lira-Barraza, 941 F.2d at 751 (emphasis added). Typically, this explanation is made by analogizing to some other provision of the guidelines. Because the district court did not provide such an explanation for the extent of its departure, we must vacate Morton's sentence and remand for resentencing consistent with Lira-Barraza.
 
 2. Obstruction of Justice
 
 31
 Morton objects to two two-level enhancements for obstruction of justice under Sec. 3C1.1. The district court enhanced Morton's sentence once because he gave an alias to the magistrate judge on arraignment and a second time because he refused to show his hand at trial. We affirm both enhancements.
 
 
 32
 Morton argues neither alleged obstruction was "material" because neither actually obstructed justice. We have rejected this very argument because Sec. 3C1.1 "on its face encompasses 'attempted' obstruction of justice as well as actual obstruction." United States v. Baker, 894 F.2d 1083, 1084 (9th Cir.1990).
 
 
 33
 Morton also argues the application notes indicate that providing a false name at arrest ordinarily does not qualify for an enhancement. USSG Sec. 3C1.1 App.Note 4(a). We have, however, upheld the enhancement for giving an alias. United States v. Rodriquez-Macias, 914 F.2d 1204 (9th Cir.1990); United States v. Fine, 946 F.2d 650, 652 (9th Cir.1991), superseded in non-pertinent part, 975 F.2d 596, 604 n. 6 (1992) (en banc). Moreover, the application notes indicate the enhancement is appropriate if the defendant provides "materially false information" to a magistrate judge. USSG Sec. 3C1.1 App.Note 3(f). We affirm both enhancements.
 
 3. Criminal History Category
 
 34
 Morton argues the district court erred in calculating his criminal history category. We disagree.
 
 
 35
 Morton does not appeal the district court's finding that he was a career offender under Sec. 4B1.1. This section provides that "[a] career offender's criminal history category in every case shall be Category VI." Because the district court did not err in finding Morton was a career offender, which finding placed him in category VI, any error the court otherwise might have made in placing Morton in category VI is harmless.
 
 III. CONCLUSION
 
 36
 We affirm Morton's convictions. We vacate his sentence and remand for resentencing. The district court had authority to depart upward more than two levels under Sec. 3C1.2, but it failed to explain the extent of its departure within the structure, standards and policies of the guidelines. The district court did not otherwise err in calculating Morton's sentence.
 
 
 37
 Convictions AFFIRMED; sentence VACATED, and case REMANDED for resentencing.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 All citations in this section, unless otherwise noted, are to the Guidelines Manual effective Nov. 1, 1993