**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ronald David JONES, Jr., Defendant–Appellant.**

**No. 94–50530.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 10, 1996.

Decided June 3, 1996.

---

Before: FLOYD R. GIBSON,* JOHN T. NOONAN, Jr. and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Defendant Ronald David Jones, Jr. appeals his jury conviction for armed bank robbery, 18 U.S.C. § 2113(a) & (d), use or carrying of a firearm during commission of a crime of violence, 18 U.S.C. § 924(c)(1), and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). Jones makes four arguments on appeal: (1) his curbside identification by three bank employees was so unduly suggestive it violated his due process rights; (2) there was no probable cause for his arrest; (3) there was insufficient evidence presented at trial to support the finding that he possessed or used a firearm during the robbery; and (4) he was denied a fair trial because statements the prosecutor made in his closing argument were improper and prejudicial.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm Jones's conviction.

## I

## FACTS

On January 5, 1994, a man with a mustache entered the Grossmont Branch of Wells Fargo Bank in San Diego. He was wearing blue pants, a blue jacket, sunglasses and a baseball cap. He also appeared to be wearing a wig of brown hair. When he reached the teller, Ms. Seal, he gave her a note which said, "This is a robbery. I have a gun. Don't push any alarms. And don't want dye packs." The robber told the teller he wanted hundreds and fifties, and that he had a gun.

Seal did not believe the robber actually had a gun, but turned to the teller next to

D. Wayne Brechtel, Solana Beach, California, for defendant-appellant.

Michael G. Wheat, Assistant U.S. Attorney, argued, Roger W. Haines, Jr., Assistant U.S. Attorney, on the brief, San Diego, California, for plaintiff-appellee.

* The Honorable Floyd R. Gibson, Senior Circuit Judge for the Eighth Circuit, sitting by designa- tion.

her, Mr. Mahoney, and asked if he had any large bills. Mahoney who was closing up for the day was putting his cash away in a grey metal box to take back to the vault. As Mahoney thumbed through the cash to find large bills, the robber demanded the box, reiterating that he had a gun. The robber then reached over the counter, grabbed the box and ran out of the bank.

The bank manager, Mr. Warner, was standing behind the tellers during the robbery. He followed the robber outside, briefly lost sight of him, but then saw a yellow cab number 557 or 577 take off from the parking lot. Warner returned to the bank and called 911 to report the robbery.

Officer David Lachapelle received a 911 radio operator's call alerting him to the bank robbery and giving him a description of the robber including his possible use of a yellow cab number 557 or 577 as an escape vehicle. Interstate 8 was considered a possible escape route. As Officer Lachapelle entered the onramp to Interstate 8 he saw a yellow cab traveling in the same direction he was headed. He pulled up to the cab and saw that it was number 557. He did not see any passenger in the cab until he pulled alongside it; then he saw a passenger crouching down in the back seat. The cab turned on its code blue lights indicating that the driver was in distress.

Officer Medero, who had joined Officer Lachapelle, pulled the cab over on the shoulder of the highway. Officer Medero ordered the driver out of the cab. Defendant Jones was the passenger in the back seat and he continued to crouch down until ordered out of the cab. A search of the cab revealed sunglasses, a baseball cap, a couple of hairpieces, and a grey metal box full of money. Under the back seat of the cab the police found a loaded revolver, holster, and a box of ammunition.

About ten to fifteen minutes after the robbery, Officer Oliver drove Seal, Mahoney, and Warner to the shoulder of Interstate 8 where Jones was in custody, to see if he matched the description of the robber. On the way to the location, these witnesses were read a "field identification admonition." They were instructed to remain silent as they drove by the subject, until Officer Oliver asked them individually for comments.

When they drove by the area the first time, Jones was inside the patrol car. The only visible person in the area who was not in a police uniform was the cab driver. Both Seal and Warner said they had not seen the robber, while Mahoney thought he was in the cab. Officer Oliver left the highway and attempted to reapproach the area, but the road they were on was ten feet lower than the highway. Nevertheless, catching sight of Jones's face, Warner was sure Jones was the robber and wanted to know the whereabouts of the rest of the stuff Jones had been wearing. Officer Oliver got back on the highway and passed by the scene again. This time Jones was standing near two police officers who were holding up the wig, baseball cap, and sunglasses found in the cab. All three witnesses declared with certainty that Jones was the robber.

## II

## DISCUSSION

### A. Curbside Identification

■ Jones argues the identification of him by the three bank employees as he stood on the side of the highway was so suggestive it violated his right to due process. We review this issue de novo. *United States v. Matta–Ballesteros,* 71 F.3d 754, 769 (9th Cir.1995).

■ An identification procedure that is so unduly suggestive as to give rise to a substantial likelihood of mistaken identification may violate due process. *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972). To determine whether an identification procedure is impermissibly suggestive, we review the totality of the circumstances. *Biggers,* 409 U.S. at 199, 93 S.Ct. at 382; *Matta–Ballesteros,* 71 F.3d at 769. The factors we consider in evaluating the likelihood of misidentification include: (1) the witness's opportunity to view the criminal at the time of crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time

between the crime and the confrontation. *Biggers,* 409 U.S. at 199–200, 93 S.Ct. at 382–83; *Matta–Ballesteros,* 71 F.3d at 769.

■ In the present case, the witnesses had the opportunity during the robbery to get a good, complete look at the robber. They were quite close to him, and their attention was focused on him as each of them knew he was robbing the bank. The descriptions they gave to the police were accurate, and with the exception of variations in their estimates of the robber's height, their descriptions were consistent. Ten to fifteen minutes after the crime, the witnesses were taken to where Jones was in custody on the shoulder of the freeway. Each witness confidently identified him as the bank robber.

The circumstances of the drive-by identification were clearly suggestive. Other than the taxi driver, Jones was the only civilian presented for identification. He was surrounded by police officers who were holding up several items found in the back of the cab which matched the disguise worn by the bank robber.

We have previously upheld suggestive procedures, recognizing the benefit of permitting witnesses to make an identification while the image of the perpetrator is still fresh in their minds. *See United States v. Kessler,* 692 F.2d 584, 585 (9th Cir.1982). The fact that only one suspect is presented for identification does not make the identification procedure invalid. *Id.* As we noted in *Kessler,* "where the procedure employed does not give rise to 'a very substantial likelihood of irreparable misidentification,' identification evidence is for the jury to weigh." *Id.* at 587 (quoting *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977)).

In light of the factors considered above, we conclude there was not a substantial likelihood of misidentification by the witnesses' curbside identification of Jones.

## B. Probable Cause

Jones argues the district court erred by denying his motion to suppress evidence because the evidence was obtained as a result of his invalid arrest. Jones contends his arrest was invalid because it was not supported by probable cause.

■ We review a motion to suppress and the determination of probable cause de novo. *United States v. Valencia,* 24 F.3d 1106, 1108 (9th Cir.1994). "Probable cause to arrest exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the suspect is committing or has committed a crime." *United States v. Arzate–Nunez,* 18 F.3d 730, 735 (9th Cir. 1994).

■ Although the parties dispute whether Jones was arrested before or after Lachapelle looked into the cab and found the items linking Jones to the robbery, we conclude the officers had probable cause to arrest Jones when he got out of the cab. This conclusion is based on the facts that Jones was in yellow cab number 557 as identified by the bank manager, the cab had been located where one would expect the robber's getaway car to be, Jones was crouched down in the back seat consistent with an attempt to avoid detection, the cab turned on its code blue lights indicating a problem, and when Jones got out of the cab the officers could see that he fit the general description of the bank robber. The motion to suppress was properly denied.

## C. Evidence of Possession

A Smith & Wesson .357 caliber handgun was found under the back seat of the cab. Jones contends there was insufficient evidence to support the findings that he possessed the gun at all, that he possessed it when he robbed the bank, or that he "used" it during the robbery within the meaning of § 2113(d).

■ Evidence to support a conviction is sufficient if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Vgeri,* 51 F.3d 876, 879 (9th Cir.1995).

Section 2113(d) provides:

Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.

18 U.S.C. § 2113(d).

The evidence is simple. During the bank robbery, Jones claimed to have a gun, but no one ever saw a gun. After Jones got out of the cab, one of the officers found a gun and holster under the back seat, along with the box of money taken from the bank, and items consistent with the robber's disguise. No fingerprints were lifted from the gun.

The presence of the gun under the seat of the cab which Jones had just vacated is sufficient evidence to support a finding that he possessed the gun in the cab. *United States v. Gutierrez*, 995 F.2d 169, 171 (9th Cir.1993). The question is whether there was sufficient evidence that Jones possessed the gun during the robbery.

When a defendant claims to possess a gun during a robbery, a jury may reasonably infer that the defendant possessed a gun during the robbery. *United States v. Ray*, 21 F.3d 1134, 1141 (D.C.Cir.1994). Here, Jones claimed to have a gun during the robbery, *and* a gun was later found in his possession among the other items of the robbery. We hold this evidence is sufficient to support the inference that Jones possessed the gun during the robbery.

The next question is whether there was sufficient evidence that Jones *used* the gun during the robbery. Mere possession of a concealed gun during a robbery without revealing it or referring to it is not sufficient to support a violation of section 2113(d). *See id.; United States v. Perry*, 991 F.2d 304, 309 (6th Cir.1993). The defendant must "use" the gun in the commission of the crime. 18 U.S.C. § 2113(d). As the Supreme Court recently decided in the context of 18 U.S.C. § 924(c)(1), "use" includes "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Bailey v. United States*, —— U.S.

——, ——, 116 S.Ct. 501, 508, 133 L.Ed.2d 472 (1995). The Court went on to note that this understanding of the term "compels the conclusion that even an offender's reference to a firearm in his possession could satisfy" the "use" requirement of section 924(c)(1). *Id.*

Here, Jones told the bank tellers he had a gun, and he told them this to get them to comply with his demand for money. Even though no one saw the gun, the evidence was sufficient to prove Jones's "use" of the gun during the robbery for the purpose of 18 U.S.C. § 2113(d). *See Ray*, 21 F.3d at 1141.

**D. Prosecutor's Comments**

Jones contends the prosecutor's closing argument misled the jury regarding the suspect status of the cab driver. Because no objection was made at trial, Jones concedes the "plain error" standard of review applies. *See United States v. Williams*, 990 F.2d 507, 510 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 333, 126 L.Ed.2d 278 (1993). "Plain error is highly prejudicial error affecting substantial rights, and is found only in exceptional circumstances." *Id.* at 511 (quoting *United States v. Kessi*, 868 F.2d 1097, 1102 (9th Cir.1989)).

Jones challenges on appeal the following portion of the prosecutor's closing argument:

Well, you might say, well, how do we know the Defendant put the gun there? This is a public conveyance—a taxicab. I don't think it takes much common sense to realize that cab drivers who transport people around town that they don't know would not leave a loaded firearm and a box of ammunition underneath the seat in the cab where people are sitting behind him. That doesn't make sense that a cab driver would leave a gun hidden underneath the seat.

Jones asserts that the cab driver was suspected of being involved in the robbery. The record reflects discussion at pretrial hearings about whether the cab driver would be tried with Jones. Because the prosecutor was aware of the cab driver's suspect status, Jones argues it was improper to paint the

cab driver as an innocent civilian. If the jury had been aware that the cab driver was suspected of being an accomplice, Jones contends there is a strong likelihood that the outcome of the case would have been different. Jones also argues the prosecution improperly appealed to the jury's "passion and prejudice."

Jones fails to explain how the outcome of the case would have been different if the jury had been aware of the cab driver's status as a possible suspect. If the cab driver was in fact a planned getaway driver, Jones's presence in the car would resolve any doubts of his identity as the bank robber. Although the gun might have belonged to the cab driver, its presence in the back of the cab strongly supports Jones's possession of it. The prosecutor's comments about the cab driver do not amount to plain error.

We have also examined other portions of the prosecutor's closing argument challenged by Jones and conclude the challenged comments do not amount to plain error.

AFFIRMED.