91 F.3d 155
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clinton David AMES and Paul Christian Ames, Defendants-Appellants.
 No. 95-10328, 95-10329.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 17, 1996.
Decided July 10, 1996.
 
 Before: LEAVY, T.G. NELSON and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Clinton David Ames and Paul Christian Ames appeal their jury convictions for bank robbery in violation of 18 U.S.C. §§ 924(c) and 2113. Because the parties are familiar with the facts, we need not recite them here.
 
 Juror Misconduct
 
 3
 The fact that the district court did not conduct an evidentiary hearing based on Houck's allegations does not, in and of itself, require a mistrial. "Assuming that there was juror misconduct, it is still true that not every incident of juror misconduct requires a new trial. The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." United States v. Klee, 494 F.2d 394, 396 (9th Cir.) cert. denied, 419 U.S. 835 (1974) (citations omitted). "An evidentiary hearing is not mandated every time there is an allegation of jury misconduct or bias. Rather, in determining whether a hearing must be held, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." United States v. Angulo, 4 F.3d 843, 847 (9th Cir.1993) (citations omitted). "[I]n determining whether a hearing must be held, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." Id.
 
 
 4
 Here, the district judge conducted a private interview with the complaining juror, Houck, and also allowed counsel to question her. The fact that the judge decided to interview Houck regarding her allegations to elicit more information, as opposed to some other method, was not an abuse of discretion. Based upon the interviews and his observations of juror Houck throughout the trial, the district judge found her allegations of jury misconduct to be incredible. Because the district judge was in the best position to weigh the sincerity of juror Houck's complaints and observe Houck prior to and during the trial, the district judge did not abuse his discretion in not allowing an individualized voir dire of the entire jury panel.
 
 Out-of-court identification
 
 5
 The one-on-one show-up procedure is a legitimate procedure to obtain out-of-court identification. United States v. Bagley, 772 F.2d 482, 492-93 (9th Cir.1985), cert. denied, 475 U.S. 1023 (1986); United States v. Kessler, 692 F.2d 584, 585 (9th Cir.1982).
 
 
 6
 The witnesses were taken separately to view the defendants through the drive-through teller window. Each defendant was viewed individually. The fact that the defendants may have been handcuffed at the time of the show-up does not render the show-up unnecessarily suggestive. "The use of handcuffs or other indicia of custody will not invalidate a show-up, at least where necessary for the prompt and orderly presentation of the suspect, consistent with protection of the officers and witnesses." Kessler, 692 F.2d at 586; see also Bagley, 772 F.2d at 492.
 
 
 7
 Even if the identification procedure was unnecessarily suggestive, if the identification is nonetheless reliable under the totality of the circumstances, there would be no due process violation in its admission. United States v. Dring, 930 F.2d 687, 693 (9th Cir.), cert. denied, 506 U.S. 836 (1991).
 
 
 8
 In Neil v. Biggers, 409 U.S. 188, 199-200 (1972), the Supreme Court set forth the factors to be considered in determining the reliability of a pretrial identification. Those factors are: 1) the witness's opportunity to view the criminal during the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description of the criminal; 4) the witness's level of certainty at the identification confrontation; and 5) the length of time between the crime and the confrontation.
 
 
 9
 In this case, the witnesses had approximately 45 to 60 seconds to observe the robbers during the commission of the robbery. The witnesses also indicated that they had focused their attention on either one or both of the robbers during the entire robbery. Most of the witnesses were able to give detailed descriptions of the robbers immediately after the robbery. See United States v. Simoy, 998 F.2d 751, 753 (9th Cir.1993) ("Counterbalancing [the witness's] poor viewing opportunity, however, is [the witness's] highly accurate description of appellant prior to the suggestive procedure.") The witnesses gave detailed descriptions of the clothing worn by the robbers, detailed descriptions of the body types of the robbers, and witness Badoni informed the police of the tattoo on one of the robber's arm. Further, the show-up was conducted approximately one hour after the crime had occurred.
 
 
 10
 In light of the above factors, the district court did not err in holding that the pretrial identifications were reliable. Given that the pretrial identifications were reliable, the in-court identifications were "sufficiently reliable to justify their admission into evidence. It was then for the trier of fact to make the final determination of believability." Cupp v. Ponce, 735 F.2d 333, 338 (9th Cir.1984).
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3