133 F.3d 930
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Pamela Allen GREEN, Defendant-Appellant.
 No. 96-50437.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 10, 1997.
Decided Dec. 17, 1997.
 
 1
 Before REINHARDT and TASHIMA, Circuit Judges, and FITZGERALD, District Judge.**
 
 
 2
 MEMORANDUM*
 
 
 3
 On February 23, 1993, Pamela Allen Green (Green) was charged in an indictment with conspiracy to misapply money and funds belonging to Security Pacific National Bank (Security Pacific), in violation of 18 U S.C. § 371, and four counts of aiding and abetting the misapplication of bank funds in violation of 18 U.S.C. §§ 2 and 656. The indictment alleged that beginning in August 1987 and continuing through September 1987, Green conspired with Swinton Phillip (Phillip) and Edward Kim (Kim) to misapply money belonging to Security Pacific. Kim was the operations officer in the Mortgage Backed Securities Department at Security Pacific, and Phillip was Security Pacific's Assistant Vice-President. Phillip and Kim planned to embezzle money from Security Pacific by withdrawing money from mortgage suspense accounts.
 
 
 4
 The evidence established that Kim prepared the necessary documentation to fraudulently wire-transfer money from Security Pacific accounts to accounts at other financial institutions. Phillip signed the documentation, thus authorizing the wire transfers.
 
 
 5
 Phillip contacted Green prior to the first wire transfer, explaining that he had a friend doing some "phony business with money" and needed an account outside of California through which he could wire money. Green and Phillip agreed that the money could be wired to accounts in her name in Florida, and that she would keep twenty percent of the money placed in her account. Phillip also informed Green that he and Kim were embezelling the funds from Security Pacific. Green set up a partnership account with her friend Maria Oliphant. Phillip testified that in his opinion, Green set up the partnership account because the amounts of the transfers were too large for an individual account.
 
 
 6
 Four illegal wire transfers from Security Pacific accounts were executed from August 24, 1987 through September 2, 1987, ranging in amounts from $30,672.98 to $98,540.58. For each illegal wire transfer, Green instructed Phillip where to send the funds. The transfers followed the same pattern in which the money was transferred from a Security Pacific account to an account maintained in one of three banks under either Green's name, Oliphant's name, or both their names. Green would keep twenty percent of the amount transferred and a day or two later either Oliphant or Green would transfer the balance of the money back to Phillip and Kim.
 
 
 7
 Federal Bureau of Investigation (FBI) agents interviewed Green. Green told the FBI that Phillip planned to buy one of Green's properties in either New York or Florida, and that the twenty percent from the wire transfers represented a down payment on the property. Green could not explain why the down payment was done in four wire transfers to three different banks.
 
 
 8
 Green gave the FBI two letters which Green claimed were signed by Phillip. In one letter, Phillip stated that Green was unaware of the source of the funds and that Green believed she was acting prudently on behalf of Phillip for the purchase of property in Florida. At trial, Phillip testified that he never discussed buying property with Green. Phillip also testified that several months after the wire transfers, while Phillip was in the hospital after suffering a stroke, Green tricked him into signing two blank pieces of paper by explaining that she needed copies of his signature for an insurance policy. Phillip further testified that although the letters Green gave to the FBI bore his signature, he did not write the text contained in the letters. He also testified that his name typed below his signature was misspelled.
 
 
 9
 Green testified at trial that she was unaware that the wire transfers were fraudulently obtained and that she believed Phillip was interested in purchasing property she owned in Florida. She testified that the twenty percent she kept was for a down payment on the property. Finally, she testified that Ms. Oliphant was a real estate broker who was assisting her in the real estate transaction. Special Agent Malynda Irby of the FBI testified that Ms. Oliphant stated in an interview with the FBI that Phillip wired the money to Green for the purpose of buying some of Green's property in Florida.
 
 
 10
 Green was found guilty, on August 30, 1993, of four of the five counts of the indictment. On December 16, 1993, Green moved for a new trial based on newly discovered evidence. Green contended that after the trial, she received a written statement from Ms. Oliphant, dated September 3, 1993. According to the statement, Oliphant, if called, would have testified that she recalled a conversation with Phillip in which Phillip told her that he was interested in buying some Florida property belonging to Green.
 
 
 11
 Green argued that she failed to discover the Oliphant evidence because her attorney, Mr. Phillip Davis, advised her prior to trial not to procure testimony from Oliphant. The government opposed the motion for a new trial, arguing that the Oliphant evidence was well known to Green in advance of trial from a number of sources, including an FBI interview with Oliphant. The government also argued that Mr. Davis was not Green's counsel prior to trial but initially appeared pro hac vice on the first day of trial.
 
 
 12
 The trial court granted Green's motion for a new trial, but in a memorandum decision filed March 16, 1995, we reversed the trial court and remanded the case for sentencing.
 
 
 13
 On May 8, 1995, the district court filed the mandate and set a June 26, 1995 sentencing date. On May 25, 1995, Green filed a motion for a new trial pursuant to Rule 33 and/or motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. Again, Green argued that she received ineffective assistance of counsel from Mr. Davis. On June 5, 1996, the trial court denied the motion for a new trial because it was untimely filed, and denied the § 2255 motion because Green had yet to be sentenced. The trial court continued Green's sentencing to July 29, 1996.
 
 
 14
 On July 29, 1996, the trial court sentenced Green to one year and one day incarceration but suspended the sentence and placed Green on probation for four years. The court ordered Green to perform 300 hours of community service and to pay $55,832 in restitution to Security Pacific.
 
 
 15
 The trial court entered a judgment and commitment order on August 1, 1996. Green filed a timely notice of appeal on August 7, 1996, and we have jurisdiction under 28 U.S.C. § 1291.
 
 
 16
 There is sufficient evidence to support a conviction if, upon review of the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Jones, 84 F.3d 1206, 1210 (9th Cir1996), cert denied, 117 S.Ct. 405 (1996). "Under the law of this circuit, it is clear that the right to seek review of the sufficiency of the evidence is waived if the accused fails to make a motion for judgment of acquittal before the matter is submitted to the jury." United States v. Tisor, 96 F.3d 370, 379 (9th Cir.1996), cert. denied, 117 S.Ct. 1012 (1997). Green failed to make a motion for acquittal at the close of the evidence and, therefore, waived her right to seek review of the sufficiency of the evidence. Even if Green had timely raised a motion for acquittal, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 
 17
 The evidence introduced at trial established that Green agreed to assist Phillip with the wire transfers so that money from a friend doing some "phoney usiness with money" could be wired through an account outside of California. Green provided accounts through which Phillip and Kim could move the stolen money, and instructed Phillip and Kim to which accounts they should wire the money. Green kept twenty percent of the money before either she or Oliphant wired it back to California. Green informed Phillip that she opened a joint account with Oliphant, and Phillip believed that the purpose of the joint account was to justify the large amounts of money being wired. Green was aware that the wire transfers originated from Security Pacific and that Security Pacific was being defrauded.
 
 
 18
 Green attempted to conceal the conspiracy by stating that the twenty percent she kept from each transfer was a down payment from Phillip to buy some of Green's property. Green could not explain to the FBI why the down payment was in four wire transfers to three banks. Phillip testified that he never discussed a real estate transaction with Green.
 
 
 19
 Green informed the FBI that she received two letters from Phillip regarding Phillip's purchase of Green's Florida property. However, Green was unable to explain to the FBI how she received the letters, or why one letter dated August 6, 1987 was not received until December 1987. Additionally, the jury could have reasonably inferred that Green tricked Phillip into signing two blank pieces of paper on which Green later wrote false text.
 
 
 20
 Viewing the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient for a reasonable jury to have found Green guilty of her crimes. Green's conviction was not plain error. See United States v. Quintero-Barraza, 78 F.3d 1344, 1351 (9th Cir.1996), cert. denied, 117 S.Ct. 135 (1996)(review is for plain error or to prevent manifest injustice).
 
 
 21
 Green has raised her claim of ineffective assistance of counsel on direct appeal. However, such a claim should ordinarily be brought as a collateral attack on the conviction under 28 U.S.C. § 2255. United States v. Houtchens, 926 F.2d 824 (9th Cir.1991). See United States v. Daly, 974 F.2d 1215, 1218 (9th Cir.1992). This case does not warrant an exception to the general rule. Green has not appealed the district court's determination that her § 2255 motion was premature because it was filed before her sentence was imposed, and the government does not assert that she is precluded from filing a timely motion following completion of her direct appeal.
 
 
 22
 Affirmed.
 
 
 
 **
 Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit, except as provided by Ninth Cir. R. 36-3