**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dennis Paul TIMMINS, Defendant–Appellant.**

No. 00–30224.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 2002.

Filed July 17, 2002.

William S. Labahn, Law Offices of William S. Labahn, P.C., Eugene, OR, for the defendant-appellant.

Michael W. Mosman, United States Attorney, Portland, OR, for the plaintiff-appellee.

Before: TROTT and T.G. NELSON, Circuit Judges, and SHADUR,* District Judge.

SHADUR, District Judge.

Dennis Timmins ("Timmins") appeals his jury conviction on three counts of unarmed bank robbery, one count of armed bank robbery and a firearms offense in violation of 18 U.S.C. §§ 924(c)(1) and 2113(a) and (d),[1] on which he is currently serving a sentence of just under 30 years—354 months. Timmins contends (1) that he was incompetent to stand trial, (2) that there was insufficient evidence to support his convictions for armed bank robbery, carrying a firearm in a crime of violence and one of the unarmed bank robbery counts and (3) that his sentences for the unarmed bank robberies should be vacated in light of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Because the district court inquired inadequately into Timmins' ability to assist properly in his own defense, we remand for a determination

---

* The Honorable Milton I. Shadur, Senior District Judge for the Northern District of Illinois, sitting by designation.

1. All further citations to provisions of Title 18 will simply take the form "Section—."

whether Timmins' decision to go to trial rather than to accept an offered plea bargain was made competently.

If it is held on remand that Timmins' decision was in fact a competent one, his conviction will stand because there was sufficient evidence for a rational trier of fact to find him guilty on all counts beyond a reasonable doubt. In that respect, while there was no *Apprendi* error, the sentences imposed on the three counts of unarmed bank robbery exceeded the statutory maximum, so that those sentences would have to be reduced to the statutory maximum of 20 years.[2] If on the other hand it is held on remand that Timmins was not competent to reach the decision to go to trial within the meaning of the last clause of Section 4241(a), his convictions must be vacated and further proceedings are to follow the course marked out in this opinion.

*Background*

On January 27, 1999 a six-count indictment was filed against Timmins charging him with these offenses:

Count 1: Bank robbery on July 17, 1998, in violation of Section 2113(a)

Count 2: Bank robbery on September 24, 1998, in violation of Section 2113(a)

Count 3: Armed bank robbery on September 28, 1998, in violation of Sections 2113(a) and (d)

Count 4: Using and carrying a firearm during a crime of violence (the September 28, 1998 bank robbery), in violation of Section 924(c)(1)

Count 5: Bank robbery on September 30, 1998, in violation of Section 2113(a)

Count 6: Bank robbery on January 4, 1999, in violation of Section 2113(a)

Count 1 was dismissed on the government's motion before trial. That left in place charges that, even apart from any overall possibility of consecutive sentencing, carried the potential for a 25–year–maximum term for armed bank robbery plus a mandatory five-year consecutive sentence for the gun charge—a total of 30 years.

At some point the government offered, and Timmins' attorney strongly recommended that he accept, a guilty plea with a 12–1/2–year custodial term-less than half of what Timmins faced in the event of his conviction at trial. Timmins refused to consider the plea offer—a refusal explained by the psychiatric and psychological evaluations of two professionals.

First of those was psychiatrist Dr. Esther Gwinnell, who was authorized to evaluate Timmins' competency to stand trial after he filed his first motion for a competency hearing in February 1999. Dr. Gwinnell's May 7, 1999 report stated in relevant part:

> Dennis Timmins is a 35 year old man who has an extensive history of psychosis, and has been hospitalized on multiple occasions. At the time of my evaluation, he demonstrates an ongoing delusional process of the type that I would describe as Paranoia, with a fixed delusional belief that he is being harassed by the police and "the system" because of their envy and resentment about his athletic ability and his intellect. He presents as guarded and suspicious, and interprets everything that happens around him according to his delusional beliefs. He also is quite grandiose in his presentation, believing

**2.** That reduction would not affect Timmins' sentence, because those sentences run concurrently with a lawful 24–1/2–year term for the armed bank robbery conviction, which would remain untouched.

that he is smarter than everyone around him, and attributing all disagreement with his beliefs to envy or resentment.

\*    \*    \*    \*    \*    \*

Because of his idiosyncratic interpretation of the world around him, he has irrational beliefs about how his case should be defended that are not only outside of the ordinary legal process, but which have more to do with the process of his mental illness than any appropriate defense. He does not have the capacity [to] make a reasoned choice among the alternatives available to him because he has no insight into his illness and completely believes his delusions. Although he appears to understand the nature of the charges against him, i.e. criminal charges for bank robbery, I am not clear that he understands the severity of the crime of bank robbery. He referred to this at one point as "trivial." He appears to understand the consequence of being found guilty. However, his irrational demands and paranoid ideation make it highly unlikely that he can appropriately assist in his own defense.

His DSM IV diagnosis is:

Axis I: Delusional Disorder, Grandiose and Persecutory Subtype

Probable Schizophrenia, Paranoid Type

History of methamphetamine abuse, possible other substance abuse cannot be ruled out

R/O Schizoaffective Disorder with bipolar pattern but persistent delusions separate from affective symptoms

After reviewing that report, the district court entered an order pursuant to Section 4241(d) committing Timmins to the custody of the Attorney General for observation and treatment to restore competency. On September 24 psychologist Dr. Richard Frederick at the Medical Center for Federal Prisoners in Springfield, Missouri ("FMC") issued a report as to Timmins' competency. Like Dr. Gwinnell, Dr. Frederick confirmed that Timmins displayed "persecutory and grandiose delusional beliefs," including the perception that he was being harassed by police because they were jealous of him. Dr. Frederick's report also coincided with Dr. Gwinnell's DSM IV Axis I diagnosis ("Axis I: Methamphetamine abuse[,] Schizophrenia, Paranoid Type, Chronic"). As Dr. Frederick likewise found:

The consequence of allowing Mr. Timmins to proceed in this matter, if our analysis is correct, is that he will go to trial with little chance of acquittal. He will make ineffectual arguments against the apparently strong evidence that exists against him, and he will be found guilty. This would seem to be the same as allowing any "obviously" guilty party to proceed to trial with no defense except a denial of guilt. The primary consequence of his apparently delusional beliefs for Mr. Timmins, then, is that he probably will not rationally consider a plea agreement in this matter. We predict that he will dismiss any consideration of a plea agreement and that his reasons for doing so will be based primarily in psychosis. A secondary consequence of his delusional belief is that he may fail to provide his attorney with some useful information that could otherwise result in an acquittal.

Despite that analysis Dr. Frederick concluded that "the preponderance of evidence supports the conclusion that he is competent" but "there is room for disagreement."[3] FMC filed a Certificate of Competency.

---

3. As our later discussion reflects, that affirmative conclusion as to the ultimate legal concept of competency was the product of Dr. Frederick's failure to appreciate the second

At a November 8 status hearing the government indicated that based on Dr. Frederick's report, its position was that Timmins was competent to proceed. Timmins' counsel asked that Dr. Gwinnell be permitted to review Dr. Frederick's report and reexamine Timmins. After stating that it appeared that Timmins was capable of aiding and assisting in his defense, the court entered a contingent finding of competency, provided for re-examination by Dr. Gwinnell and set the case for trial.

In December 1999 Timmins' case was reassigned to another district judge. Defense counsel filed a second motion for a competency hearing, supported by these aspects of Dr. Gwinnell's further report of January 9, 2000:

> Over all, I believe that Dr. Frederick's opinion in this case was well supported by the outcome of my evaluation of Mr. Timmins on January 7, 2000. Although I believe his mental status has improved slightly with the medication, he continues to believe his delusional system without question. He adamantly refused to consider plea agreements and repeatedly offered up denials of the significance of the evidence in his case, based on his delusional beliefs.
>
> \* \* \* \* \* \*
>
> His irrational beliefs clearly prevent him from appropriately understanding the likely outcome of a trial, and prevent him from understanding the consequences of his decisions regarding plea agreements or being found guilty at trial. Simply put, his delusions lead him to believe that he will be acquitted of all charges, regardless of the evidence presented at trial.
>
> \* \* \* \* \* \*

Dr. Frederick concluded that the preponderance of the evidence supported the conclusion that Mr. Timmins is competent to proceed. However, I believe that the fact that Mr. Timmins has behaved in precisely the manner which Dr. Frederick predicted suggests that the preponderance of evidence supports a conclusion that Mr. Timmins is *not* competent to proceed, and that he continues to base his decisions in his case on his delusions.

In response to the renewed defense motion, the district judge held a hearing on February 8, 2000. At the outset of that hearing Timmins requested appointment of new counsel, explaining that he and his lawyer differed as to appropriate strategies and that although his lawyer insisted that Timmins was "psychotic and paranoid and delusional," he was not. Dr. Gwinnell then testified extensively as to Timmins' delusional beliefs about how to deal with the evidence against him, his refusal to discuss aspects of his case with his lawyer and his refusal to respond to questions that seemed potentially essential in forming a defense. She reiterated that Timmins' decisionmaking was based almost entirely on his delusional system but that he understood the roles of the parties in court and the nature of the charges against him. Dr. Gwinnell's opinion was that while it was unlikely that Timmins would trust a new lawyer enough to share information with him, "it certainly could happen."

Ultimately the district judge concluded that it was impossible to separate Timmins' mistrust of his own attorney from his inability to aid and assist in his defense. She granted Timmins' request for new counsel and deferred ruling on the competency issue until the attorney conflict was factored out and the effect of mental illness on Timmins' ability to assist counsel could be analyzed in relative isolation.

definitional prong of that term in Section 4241(a).

At a proceeding before the district judge on March 7, Timmins was represented by his new lawyer, Alan Gallagher ("Gallagher"). Gallagher reported his belief that Timmins was able to aid and assist in his defense. He said that he and Timmins had discussed the strengths and weaknesses of each individual charge, including possible defenses, and that Timmins had even identified alibi witnesses. Gallagher expressed his view that Timmins understood that his defenses were "somewhat uphill." Gallagher further reported that he, like Timmins' original counsel, had recommended that Timmins accept the government's plea offer, but that Timmins had again rejected the recommendation. Gallagher then opined that "the decision in these things, of course, is always for the defendant to make," ignoring the truism that such is the case only if the decision is rational—that is, made by a defendant competent to reach such a decision.

For his part, Timmins accused both Gallagher and his previous lawyer of trying to "leave question in everybody's mind" about whether he was competent, and stated that they were trying to "cover for each other." Timmins also asserted that he believed he was competent to proceed.

In the end the district judge accepted Gallagher's evaluation, which although responsibly offered so far as it went (in opining on Timmins' perceived ability to assist his counsel during a trial), did not—and could not—speak to the critical question of Timmins' mental competency or lack of competency to decide rationally on a trial versus a guilty plea. Because that analyt-ical distinction was not perceived by the district judge either, she conducted no inquiry into whether the opinions of the two professionals (including the government's own psychologist) that Timmins had been unable to make such a rational choice remained intact or had instead been altered by his cooperation with his new counsel.

Following a two-day jury trial, the jury returned a verdict of guilty on Counts 2 through 6 on April 20, 2000. This appeal followed.

### Competency

■ Any defendant is competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... [and] a rational as well as factual understanding of the proceedings against him" (*Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), citing *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam)). Section 4241(a) sets out a two-pronged approach to evaluating competency: Defendant must be able both (1) "to understand 10086 the. nature and consequences of the proceedings against him" and (2) "to assist properly in his defense."[4] It goes without saying that the second of those requirements, though less frequently focused on in the caselaw, adds independent content to the judicial inquiry beyond the first (and more often considered) factor. And in this case the second requirement poses the unusual situation in which defendant's proper assistance in his defense involves the need to give rational,

---

4. Here is Section 4241(a) in its entirety:

At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

non delusional consideration to an offer of a favorable plea agreement.

■ We ordinarily review for clear error a district court's determination that a defendant is competent to stand trial, and we consider the evidence in the light most favorable to the government (*United States v. Chischilly*, 30 F.3d 1144, 1150 (9th Cir.1994)). But in this instance the psychiatric and psychological evaluations are substantively identical (as explained hereafter, the psychologist's ultimate conclusory characterization of Timmins as "competent" reflected a misunderstanding of the second branch of the Section 4241(a) inquiry, mistakenly drawing only on an affirmative answer to the first branch).

■ Because of the substantive unanimity of the professional witnesses' evidence as to Timmins' inability to reach a rational decision about going to trial (in the face of the overwhelming evidence of his guilt) as against accepting a guilty plea with a much lesser sentence, the district court's decision that failed to recognize such inability as equating to Timmins' inability to assist in his defense for Section 4241(a) purposes amounted to a mistake of law. And that being the case, the teaching of *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (citations omitted) applies with full force here:

> Little turns, however, on whether we label review of this particular question abuse of discretion or *de novo*, for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction. A district court by definition abuses its discretion when it makes an error of law.

Timmins thus contends that as a matter of law the district court erroneously disregarded both expert opinions that his mental illness prevented him from being able rationally (1) to weigh the evidence against him and (2) to decide whether to accept a plea bargain rather than go to trial. He is right.

*Expert Opinion Evidence*

As the earlier quotations from the evaluations by Drs. Gwinnell and Frederick show, there is no difference between them as to Timmins' underlying diagnosis, although they end with conflicting expressions as to his "competency." But that disparity is caused by Dr. Frederick's failure to understand the full thrust of what it means to assist properly in one's defense. What he focused on was that Timmins "knows what he is charged with, is aware that he faces a potentially lengthy prison sentence, demonstrates a fairly complete and accurate understanding of courtroom procedure, and is capable of engaging in cooperative and productive working relationships with others."

But at the same time Dr. Frederick confirmed the far more critical facts that Timmins was the victim of irrational beliefs, that those would drive him to opt for a trial and an inevitable conviction, and "that he will dismiss any consideration of a plea agreement and that his reasons for doing so will be based primarily in psychosis"—yet Dr. Frederick concluded by saying that he was "not sure to what extent the Court will consider these characteristics incapacitating." That acknowledged uncertainty essentially reflected, though it did not express, Dr. Frederick's intuitive understanding that the special circumstances of Timmins' mental illness might negate any conclusion that he was competent in the legal sense prescribed by the second prong of Section 4241(a). Dr. Gwinnell was indeed correct when she reasoned in her January 9 report that Dr. Frederick's observations actually directed a finding of *incompetence* because Timmins' decisions in his case were still based on his delusional beliefs.

*Propriety of Competency Finding*

We hold that the district court's inquiry into Timmins' competency was fatally flawed. That flaw stems from the district court's belief, without further input from the mental health professionals, that the February 8 appointment of new counsel somehow cured Timmins' earlier—demonstrated delusional mindset that prevented any rational decision as to what course to take. Having found that Timmins had become capable of participating in his defense if he were to go to trial (a conclusion that neglected whether he could at that point rationally consider *not* going to trial and accepting the proffered plea agreement instead), the district court terminated its inquiry prematurely.

No consideration was then given to whether Timmins' delusional belief system still prevented him from rationally comprehending the evidence against him and considering the plea bargain offered by the government, even though the uncontradicted evidence from both professionals had earlier established that Timmins' mental illness prevented him from making such a rational and nondelusional analysis. Timmins was never reevaluated by a psychiatrist or psychologist after having worked with his new attorney—in fact, the psychiatrist and psychologist who had conducted his previous examinations were not further consulted before or at the March 7 proceeding. Thus the only relevant *evidence* (as contrasted with the new defense attorney's opinion on a different subject) that was before the court when the final competency determination was made had confirmed that Timmins' delusions impaired his ability to determine rationally whether to accept a plea bargain.

■ While defense counsel may often be in the best position to evaluate a client's ability to participate in his defense, a lawyer is not a trained mental health professional capable of accurately assessing the effects of paranoid delusions on the client's mental processes (*Odle v. Woodford,* 238 F.3d 1084, 1088–89 (9th Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 201, 151 L.Ed.2d 142 (2001)). Courts must resist the unquestioning acceptance of counsel's representations concerning client competence (*Drope v. Missouri,* 420 U.S. 162, 177 n. 13, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)). Yet (as already stated) the court failed to consult further with any psychiatrist or psychologist before or at the March 7 status date, mistakenly relying instead on Gallagher's representations.

Indeed, if the issue were approached in terms of Fed.R.Evid. 702—which dictates the required analysis whenever opinion evidence is at issue—attorney Gallagher would clearly flunk any *Daubert–Kumho* inquiry into his qualification to render an opinion as to Timmins' competency in terms of his confirmed mental disease. Even if Gallagher's characterization had been proffered in testimonial form, it would have had to be rejected as evidence on that score.

■ It is of course well settled that it is within the government's discretion whether or not to offer a plea bargain to a criminal defendant (*United States v. Estrada–Plata,* 57 F.3d 757, 760 (9th Cir. 1995)). Although a defendant has no constitutional right to any plea bargain (*id.*), once a plea is offered it materially changes the nature of the proceedings by presenting a choice of divergent roads: Defendant must elect whether to go on defending himself or to resign himself to a public acknowledgment of guilt in exchange for a lesser sentence.

■ Inability to make that choice in rational terms fundamentally impairs the ability to assist *properly* in one's "defense." In fact, that decision represents the very essence of a proper defense—whether to defend oneself at all. Thus it

is not that the ability to accept a plea bargain in the abstract is a component of a defendant's right to defend himself. Rather the point is that once a plea bargain has been offered, it alters the landscape and adds a new element to the strategic choices a defendant is called upon to make (*see Godinez v. Moran,* 509 U.S. 389, 398–99, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993)). If a defendant does not have the mental capacity to consider the acceptance of the plea bargain in rational and nondelusional terms, his defense (as it is then constituted) is compromised.

*Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) established that plea bargaining is not punishment or retaliation "so long as the accused is free to accept or reject the prosecution's offer." That plea agreements must be entered into voluntarily further supports the idea that the defendant's ability to accept or reject the offer is central to the legitimacy of the plea bargaining process (*see Mabry v. Johnson,* 467 U.S. 504, 508–09, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)).

Moreover, we have held on the other side of the coin that "the decision to reject a plea bargain offer and plead not guilty is also a vitally important decision and a critical stage at which the right to effective assistance of counsel attaches" (*Turner v. Calderon,* 281 F.3d 851, 879 (9th Cir.2002), quoting *United States v. Zelinsky,* 689 F.2d 435, 438 (3d Cir.1982)). Given the critical importance of the decision to reject a plea, no defendant can be permitted to make that decision on the basis of truly psychotic beliefs that both psychiatric and psychological professionals uniformly agree are the product of mental illness.

Both attorney Gallagher and the district judge referred to the defendant's right to make his own decision about whether to plead guilty or proceed to trial. While it is of course true that criminal defendants have the constitutional right to plead not guilty under the Fifth Amendment, we have already pointed out that Gallagher's statement that "the decision in these things, of course, is always for the defendant to make" holds true only if the decision is made within the bounds of legal competency. It is wholly immaterial that Timmins himself believed he was competent—a belief infected by the fact that delusional people typically believe their delusions. And we have already explained why his second lawyer's statement of his own belief places nothing on the scales of decision.

Thus we remand to the district court for a hearing as to whether Timmins' decision, when represented by Gallagher, to continue to reject the government's plea bargain and to proceed to trial was made competently in the sense we have explicated in this opinion. If the answer is in the affirmative, Timmins' sentence will stand (subject to the modification discussed later, which will not diminish his time in prison).

If on the other hand Timmins could still not have considered competently the government's plea offer and could thus not have been able to assist properly in his defense as Section 4241(a) requires, his convictions must be vacated. Having been deprived in the first instance of the opportunity to make a rational judgment about the offered plea, he is now entitled to that opportunity. In that respect *United States v. Blaylock,* 20 F.3d 1458, 1468 (9th Cir.1994) has held that "where, as here, the defendant was deprived of the opportunity to accept a plea offer, putting him in the position he was in prior to the Sixth Amendment violation ordinarily will involve reinstating the original offer." By parity of reasoning, any restoration of Timmins to his original position will require the government's reinstatement of

its original plea offer of a 12–1/2–year sentence (*id.* at 1469).

If at that stage Timmins is found competent to make a rational decision as between going forward with a new trial or accepting the government's original offer, he will be entitled to make that choice (*id.*). If however it is found that he still remains incapable of making the plea decision competently, further proceedings must follow the route charted out by Section 4241(d) and, if applicable, Section 4246.

### Other Claims

We address Timmins' remaining claims to avoid further proceedings in the event that the district court on remand holds that Timmins' decision to reject the plea offer was a competent one, so that his conviction stands. Those claims do not require extended treatment.

### Insufficient Evidence

■■■ Challenges to the sufficiency of evidence are most frequently reviewed under the difficult standard articulated in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979):

> [W]hether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

But because Timmins failed to move for judgment of acquittal pursuant to Fed. R.Crim.P. 29, our standard of review looks to plain error or the prevention of a manifest miscarriage of justice (*United States v. Archdale,* 229 F.3d 861, 867 (9th Cir. 2000)). We conclude that the evidence is patently sufficient to support Timmins' convictions under either test, so—just as in *United States v. Alvarez–Valenzuela,* 231 F.3d 1198, 1201 (9th Cir.2000)—any practical difference between the standards of review is irrelevant.

### (a) Counts 3 and 4 (September 28 robbery)

Timmins first contends that there was insufficient evidence to support his convictions for armed bank robbery and for carrying or using a firearm during a crime of violence, as charged in Counts 3 and 4. That contention need not long detain us— none of his arguments supports his position.

■■■ Contrary to Timmins' assertions, whether the gun was recovered and whether the gun was operable are irrelevant to proving armed bank robbery under Section 2113(d) or proving the use of a firearm during a crime of violence under Section 924(c)(1) (*United States v. Hunter,* 101 F.3d 82, 85 (9th Cir.1996) ); (*United States v. Martinez–Jimenez,* 864 F.2d 664, 666–67 (9th Cir.1989)). Indeed, Timmins' argument that there was no evidence that he actually displayed a gun simply misstates the record. At trial the victim teller Jennifer Shoemake ("Shoemake") testified without qualification, both on direct and cross-examination, that she saw a gun in the robber's waistband and was able to observe the hammer and the handle.[5] Whether Timmins touched or brandished the weapon is immaterial under both statutes, for simply displaying it is sufficient to sustain a conviction (*Bailey v. United States,* 516 U.S. 137, 148, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995)). Finally, Timmins' averment that none of the other

---

**5.** Shoemake testified on direct examination that the robber "lifted up his windbreaker and showed me a gun." When asked what kind of gun it was she responded, "I know it was a semiautomatic. It was black. And I just saw the handle and the hammer." She also testified that the gun was positioned in the robber's waistband with the handle sticking out. On crossexamination Shoemake repeated several times that she knew she saw a gun, although she did not remember seeing the robber's hand on the gun at any point and admitted that the surveillance photos did not show a gun.

charged robberies involved the use of a gun, while true, gets him nowhere. It is axiomatic that proving that a gun was used in another robbery is not required to prove that a gun was used in the September 28 robbery.

### (b) Count 5 (September 30 robbery)

■ Timmins also urges that there was insufficient evidence to identify him as the perpetrator of the September 30, 1998 robbery charged in Count 5. That too is a meritless contention.

At trial two eyewitnesses offered testimony implicating Timmins. First was the victim bank teller. When she was asked whether Timmins was the man who robbed her, she walked closer to him and then testified, "Yes, I believe so." On cross-examination she testified that Timmins "looks like the person who robbed me." Next a bank customer testified that Timmins "looks like he could be the same person" as the robber. That eyewitness testimony was corroborated by Timmins' probation officer, who testified that he was "positive" that a surveillance photograph from the September 30 robbery showed Timmins. Finally, an FBI Agent experienced in investigating bank robberies with demand notes testified that in his opinion the four demand notes from the four charged robberies appeared to be from the same or same type of notebook, employed similar language and printing styles and were written by the same person. Importantly, that testimony linked the note used on September 30 with the notes used in the robberies charged in Counts 2 and 3, on which Timmins' left thumb print and right palm prints were identified.

■ Timmins attempts to parse the summarized testimony separately, claiming that neither eyewitness offered testimony sufficient to support the conviction. But it is of course the record as a whole that must be reviewed when considering the sufficiency of the evidence (*United States v. Peters*, 962 F.2d 1410, 1414 (9th Cir. 1992)). Any lack of conclusiveness in one or another portion of the testimony does not undermine the validity of a conviction. When the totality of the government's proof at trial is viewed (as is required) in the light most favorable to the prosecution, it is clear that a rational jury could have concluded beyond a reasonable doubt that Timmins was the perpetrator.[6]

### Improper Sentence

■ On July 10, 2000 Timmins was sentenced to:

1.  294 months as to the armed bank robbery (Count 3),
2.  294 months as to each of the three counts of unarmed bank robbery (Counts 2, 5 and 6), to be served concurrently with one another and with the sentence imposed on Count 3, and
3.  60 months as to the firearm charge (Count 4), to be served consecutively to the sentence imposed on Count 3.

Timmins argues that the sentences for the three unarmed bank robbery counts should be vacated in light of the oft-cited holding of *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.

But no *Apprendi* error clouds Timmins' sentences, for the use of a firearm during

---

6. It is worth noting that the just-completed recitation of the overwhelming evidence of Timmins' guilt underscores the importance of his being capable of reaching a rational deci-sion between (1) the lesser sentence that is offered by a guilty plea and (2) rolling the dice by risking a sentence more than twice as long following a trial.

the September 28 bank robbery was submitted to the jury and proved beyond a reasonable doubt.

It is true that the 294 month sentence imposed on each of the unarmed bank robbery counts impermissibly exceeds the 20 year statutory maximum authorized by Section 2113(a). But that error did not result in a net increase in Timmins' overall sentence, because those unarmed bank robbery sentences run concurrently with the valid 294 month sentence for armed bank robbery. To conform Timmins' sentence to the statutory requirements, however, we order that on remand the concurrent sentence of 294 months on each of Counts 2, 5 and 6 be reduced to 240 months.

### Conclusion

Because the district court's inquiry into Timmins' competency was inadequate, we VACATE his convictions and REMAND for a fresh determination of whether his decision to reject the government's plea bargain offer was made competently in the statutory sense prescribed by the second prong of Section 4241(a). If the district court concludes that Timmins' decision was in fact competent, the convictions are ordered reinstated because his other contentions in this appeal provide no relief—the evidence was sufficient for a rational trier of fact to find Timmins guilty beyond a reasonable doubt and there was no *Apprendi* error in sentencing, although each 294–month sentence on Counts 2, 5 and 6 is ordered reduced to 240 months to comply with the statutory maximum. If however the district court concludes otherwise, this remand is for further proceedings consistent with this opinion.

VACATED and REMANDED.