**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Deshon Rene ODOM, Defendant–Appellant.**

No. 98–50330.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 2003.

Filed May 20, 2003.

Maria E. Stratton, Federal Public Defender, Los Angeles, CA, for the defendant-appellant.

James W. Spertus, Assistant United States Attorney, Santa Ana, CA, for the plaintiff-appellee.

Before: PREGERSON, TASHIMA and CLIFTON, Circuit Judges.

## OPINION

CLIFTON, Circuit Judge:

Deshon Rene Odom appeals his conviction for armed bank robbery under 18 U.S.C. § 2113(d). This case presents the fact pattern of a bank robber carrying a gun, which was for the most part concealed, but which was briefly and inadvertently displayed during the robbery. Odom argues that he did not "use" the gun within the meaning of § 2113(d) because he never alluded to it or intentionally displayed it, and therefore that he should have only been convicted for unarmed bank robbery under § 2113(a). Prior decisions have dealt with the issue of what constitutes an "armed" bank robbery in a variety of scenarios, but we have not dealt with this precise variation. Thus, we must here answer the question: can a bank robber with a concealed gun who never mentions or insinuates having one, but who displays it inadvertently, be convicted of armed bank robbery? We believe the answer is no, and therefore reverse.

## I. BACKGROUND

On December 20, 1996, Odom entered the Bellflower, California branch of Bank of America and sat down at the desk of the branch manager. He told her it was a

"professional robbery" and instructed her not to set off any alarms. He directed her to get money out of the ATMs. While Odom remained seated at the desk, the manager had a teller accompany her to the ATM room and told the teller what was happening on the way. Odom then instructed the manager to return to the desk, and he removed a pillowcase from under his jacket. The manager took the pillowcase back to the ATM room, loaded it with cash cassettes, and returned to the desk. Upon Odom's instructions to remove the cash from the cassettes, the manager and the teller went back to the ATM room, unlocked the cassettes, and put the cash in the pillowcase. In the process, the teller managed to activate four alarm systems.

When the manager approached the desk and handed Odom the pillowcase (at that point containing the cash), Odom stood up and raised his jacket to put the pillowcase underneath it. When he raised his jacket, the manager observed the handle of a gun tucked inside the waistband of his pants. Odom put the pillowcase underneath his jacket and remarked that it was "nice doing business" with them.

Throughout this time, Odom's partner, Reginald Washington, was monitoring the situation from the lobby area. Odom then exited with Washington through the back doors where they were immediately apprehended by police. The police ordered them to the ground, and when Odom bent down to comply, a loaded handgun fell to the ground. The police also recovered a loaded revolver from Washington.

A grand jury returned a three-count indictment charging Odom with (1) conspiracy in violation of 18 U.S.C. § 371, (2) armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and (3) knowingly using or carrying a firearm in a crime of violence in violation of 18 U.S.C. § 924(c). After a one-day bench trial, Odom was found guilty on all three counts. He was sentenced to 33 months for each of counts one and two, to run concurrently, and 60 months on count three, to run consecutively.

On appeal, Odom challenges only the conviction for armed bank robbery under 18 U.S.C. § 2113(d), contending that he should have been convicted instead only for unarmed bank robbery under 18 U.S.C. § 2113(a). He does not challenge his conspiracy conviction or his conviction under 18 U.S.C. § 924(c)(2). Notably, he concedes that he was carrying the loaded gun.

At trial, there was no testimony or evidence suggesting that Odom intentionally displayed the gun or intended to intimidate the victim with his gun. The branch manager testified as follows: "When he stood and I handed him the pillowcase, he raised his jacket to put the pillowcase under his jacket and when he raised the jacket I saw a gun inside his pants belt." Although the district court did not make a specific finding that the gun was inadvertently displayed, it insinuated that was the case, simply finding that, inadvertent or not, it was of no moment under § 2113(d). And that, indeed, is the question we must resolve.

## II. STANDARD OF REVIEW

We review de novo claims of insufficient evidence. *United States v. Carranza*, 289 F.3d 634, 641 (9th Cir.2002). Evidence is sufficient if, viewed in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* The interpretation of the federal bank robbery statute is a question of law reviewed de novo. *United States v. Martinez–Jimenez*, 864 F.2d 664, 665 (9th Cir.1989).

## III. DISCUSSION

The crime of bank robbery occurs when an individual obtains or attempts to obtain money from a federally insured bank "by force and violence, or by intimidation." 18 U.S.C. § 2113(a). Rather than a separate offense, armed bank robbery under § 2113(d) is an aggravated form of bank robbery as defined in § 2113(a), carrying a longer maximum sentence: 25 years imprisonment compared with the 20–year maximum under § 2113(a). *Busic v. United States,* 446 U.S. 398, 404 n. 10, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980) (noting the incremental five years for armed bank robbery), *superseded by statute on other grounds as stated in United States v. Gonzales,* 520 U.S. 1, 10, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997); *United States v. Beierle,* 77 F.3d 1199, 1201 n. 2 (9th Cir. 1996). Section 2113(d) provides that:

> Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person *by the use of* a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.

18 U.S.C. § 2113(d) (emphasis added). Odom asserts that his conviction for armed bank robbery under § 2113(d) was improper because he did not put in jeopardy the life of any person "by the use of" a dangerous weapon. *Id.* We agree.

 We have previously recognized that "[m]ere possession of a concealed gun during a robbery without referring to it is not sufficient to support a violation of section 2113(d)." *United States v. Jones,* 84 F.3d 1206, 1211 (9th Cir.1996). In contrast, intentional display of a gun qualifies as "use" under § 2113(d). The firearm need not be blatantly brandished. Lifting up a jacket so that a victim can see a gun tucked into a waistband is enough. *United States v. Timmins,* 301 F.3d 974, 983 (9th Cir.2002). Similarly, just mentioning a gun in the course of robbing a bank, even if the gun is never actually displayed, is sufficient to be a "use" under § 2113(d). *Jones,* 84 F.3d at 1211. Indeed, a defendant can be convicted under § 2113(d) even if what he intentionally displays is not a real gun. *Martinez–Jimenez,* 864 F.2d at 667 (defendant holding a toy gun by his side was sufficient; "[h]e need not brandish the firearm in a threatening manner"). The common denominator to the decisions affirming convictions under § 2113(d) is that the robber knowingly made one or more victims at the scene of the robbery aware that he had a gun, real or not.

In *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the Supreme Court discussed the definition of "use" of a firearm in a different statute, 18 U.S.C. § 924(c). That provision imposes additional penalties on someone who, in a crime of violence or drug trafficking crime, "uses or carries a firearm." 18 U.S.C. § 924(c)(1)(A). (Odom was convicted and sentenced under that statute, as well, and does not contest that portion of his conviction.) Section 924(c) was adopted after the federal bank robbery statute and is worded somewhat differently, but both statutes include the word "use." The Court interpreted the word "use" under § 924(c)(1) to require evidence sufficient to show an "active employment" of the firearm, something more than mere possession. *Id.* at 144, 116 S.Ct. 501. The Court elaborated that the "active-employment" definition "includes brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm ... [and] even an offender's reference to a firearm in his possession[.]" *Id.* at 148, 116 S.Ct. 501. But concealing a gun nearby, to be available in the event of a confrontation, is not enough:

> Some might argue that the offender has "actively employed" the gun by hiding it

where he can grab and use it if necessary. In our view, "use" cannot extend to encompass this action. If the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not "used."

*Id.* at 149, 116 S.Ct. 501.

Although *Bailey* involved a different statute, we have looked to it for guidance in cases under § 2113(d).[1] *See Jones,* 84 F.3d at 1211; *Timmins,* 301 F.3d at 983. Thus, we conclude that "use" under § 2113(d) also requires some type of "active employment."[2]

██ ██ The display of the gun tucked into Odom's waistband does not appear to us to represent "active employment" of the weapon on his part. He knowingly put it there, of course, but more than possession is required. The testimony of the branch manager does not indicate that Odom meant to display it to her or was aware that he had. She simply saw it when he lifted his jacket to put the pillowcase filled with money under the jacket. It seems unlikely that if he meant to actively employ the gun during the robbery, he would have waited until the end, after he had been given the money and was about to depart, before doing so.

Thus, because Odom's inadvertent display of his gun did not represent active employment of the weapon, we vacate his § 2113(d) conviction and the sentence, and remand to the district court for modification of the judgment to reflect conviction for unarmed bank robbery under § 2113(a) and for resentencing.[3]

**VACATED and REMANDED.**

1. One distinction worth noting between the two statutes is that § 924(c) explicitly covers a person who "uses or carries a firearm." 18 U.S.C. § 924(c)(1)(A). One of the reasons cited by the Supreme Court for its decision in *Bailey* was that defining "use" to include mere possession would render the word "carries" superfluous. 516 U.S. at 148, 116 S.Ct. 501. That reasoning does not apply to § 2113(d), since "use" is the only relevant term in that provision. Nevertheless, most of the reasoning in *Bailey* does apply to § 2113(d), as well, and, as noted, we have cited *Bailey* in our decisions concerning that statute.

2. We acknowledge that it may seem anomalous to conclude that a defendant who intentionally carries a loaded gun into a bank robbery (where he can reach for it and do real harm if he is cornered or if he panics, but who hides it in the meantime) cannot be convicted of *armed* bank robbery, while a bank robber holding a toy gun can. That result flows from the words used in the statute, however. In § 2113(d), Congress could cover simple "possession" instead of just active "use," but so far it has not done so.

3. It appears, according to what we have been told by both parties, that Odom's sentence will not be affected by our decision. He was sentenced by the district court as if he had been convicted only under § 2113(a), anyway, due to the sentence which was imposed under § 924(c), which foreclosed application of the otherwise applicable § 2113(d) firearm enhancement, under U.S.S.G. § 2B3.1(b)(2) (to avoid double-counting). The appeal was motivated by the potential future impact on Odom of a conviction under § 2113(d). Nonetheless, we vacate the sentence as well to afford the district court the opportunity to re-exercise its discretion in light of our vacating the § 2113(d) conviction.